**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ATEGRITY SPECIALTY INSURANCE COMPANY, | ) ) | |
| | ) | Case No. 24-cv-11535 |
| Plaintiff & Counter-Defendant, | ) | |
| | ) | Judge Sharon Johnson Coleman |
| v. | ) | |
| | ) | |
| QWIKX ONE CONVENIENCE STORE, INC., | ) ) | |
| | ) | |
| Defendant & Counterclaimant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ategrity Specialty Insurance Co. ("Plaintiff") brings this action against Qwikx One Convenience Store, Inc. ("Defendant"), for declaratory relief related to the cancellation of Defendant's property insurance policy. Both parties filed cross-motions for summary judgment [37] [39]. For the following reasons, the Court grants Plaintiff's motion and denies Defendant's motion.

**I.      Facts**

The following facts are drawn from the parties' Joint Stipulations of Undisputed Facts (Dkt. 27, 35) and are deemed admitted.

> i.  The Policy

Plaintiff is an insurance company incorporated in Delaware that operates in Illinois on a nonadmitted basis. Plaintiff retained the company Burns & Wilcox Ltd. ("Burns & Wilcox"), to handle certain aspects of its insurance business. that has limited authority to issue insurance policies on Plaintiff's behalf.

Defendant is an Illinois corporation with its principal place of business in Illinois. Defendant owned and operated a store at 222 W. Main St., Carpentersville, IL 60110 (the "Main St. address"), "Shar's Armanetti Fine Wine & Spirits," which sold primarily wine, liquor, and beer (the "Store").

1

Defendant retained Acrisure, LLC d/b/a Presidio Group ("Presidio") as its insurance broker. Presidio was authorized to communicate on behalf of Defendant with respect to its insurance policies.

On June 9, 2023, Presidio sent Burns & Wilcox an unsigned "Commercial Insurance Application" on behalf of Defendant and requested a quote for a commercial insurance policy. Burns & Wilcox provided Presidio with information including the insurance policy, an invoice, and a Surplus Line Risk Affidavit to be signed by Defendant. Presidio prepared an insurance application on behalf of Defendant in November of 2023. Dhirenkumar "Dhiren" Patel, the President of Qwikx, signed the insurance application on behalf of Defendant and e-mailed it to Presidio. On November 10, 2023, Presidio provided the signed application forms and Surplus Line Risk Affidavit to Burns & Wilcox. The application listed a "mailing" address of 4015 Chadwicke Court, Carpentersville, IL 60110 (the "Chadwicke Court address") and the "premises" address as the Main St. address.

On November 13, 2023, Burns & Wilcox released the Policy to Presidio via e-mail. The Policy, unlike Defendant's insurance applications, listed 222 W Main St., Barrington, IL 60010 (the "Barrington address") as the mailing address for Defendant and the Main St. address as the insured premises. Despite being listed as its mailing address, Defendant does not own or conduct business at the Barrington address. Prior to May 2024, neither Plaintiff nor Burns & Wilcox were informed that the Barrington address on the Policy was not Defendant's mailing address or should be changed. Accordingly, the Policy was never amended to reflect the Barrington address on the Policy.

ii. The Cancellation

On December 12, 2023, a risk engineering vendor conducted a risk survey and assessment of the Store on behalf of Plaintiff. The vendor reported its observations, including evidence of water damage, a blocked exit, and hazards related to the electrical and heating systems at the Store. The vendor provided recommendations to remedy these risks. On December 19, 2023, Burns & Wilcox e-mailed Presidio recommendations from the risk engineering report and stated: "Please comply with

these recommendations within 30 days and confirm so in writing or a notice of cancellation will be sent." (emphasis in original). Burns & Wilcox sent follow-up e-mails to Presidio on January 8, 2024, and January 19, 2024, reminding Presidio of the deadline to provide proof of compliance with the recommendations in the risk engineering report.

Burns & Wilcox mailed a Notice of Cancellation of Insurance to Defendant on January 23, 2024. The "Date of Cancellation" on the Notice was listed as "02/26/2024." The Notice stated: "We are cancelling this policy. Your insurance will cease on the Date of Cancellation shown above. The reason for cancellation is [that Defendant] [d]id not comply with inspection recommendation in alloted [sic] time." The Notice was mailed to the Barrington address; neither Burns & Wilcox nor Plaintiff mailed a copy of the Notice of Cancellation of Insurance to the Chadwicke Court address nor to the Main St. address. When it mailed the Notice of Cancellation, Burns & Wilcox prepared a proof of mailing in accordance with the Policy, but Defendant did not receive the Notice of Cancellation of Insurance by mail. However, Burns & Wilcox e-mailed Presidio copies of the Notice of Cancellation on January 23, February 16, and February 26, 2024.

On February 29, 2024, Burns & Wilcox e-mailed Presidio a copy of a "Cancellation" for the Policy and a return premium invoice. A week later, Presidio responded to Burns & Wilcox, attaching the Notice of Cancellation. Presidio inquired whether the Policy had been "cancelled in error" and if not, whether the Policy's coverage could be reinstated. Burns & Wilcox responded with the requirements for reinstatement, again attaching the risk engineering report and a Warranty Statement for signature. Presidio replied that they "reached out to [Defendant] and will forward all documentation as soon as possible."

On March 11, 2024, Presidio e-mailed Patel a copy of the Notice of Cancellation. Consequently, through providing the Notice to Patel, Defendant acquired actual knowledge of Plaintiff and Burns & Wilcox's assertion the Policy was cancelled effective February 26, 2024. On

3

March 13, 2024, Defendant e-mailed to Presidio, writing: "Can you send me copy of my insurance policy? Which is cancelled."

Burns & Wilcox issued a check dated March 29, 2024 to Presidio, refunding a prorated portion of Defendant's premium for the remainder of the original one-year policy period. Presidio in turn issued a check dated April 17, 2024, passing the returned portion of the premium on to Defendant. Patel deposited the premium refund check into Defendant's bank account.

iii. The May 19, 2024 Fire

On May 19, 2024 a fire at the Store destroyed the building and the property inside. Patel reported the loss to Presidio. The next day Presidio responded, writing in part: "We are reporting the 05/19/24 claim through Burns & Wilcox to Ategrity Specialty Insurance Company we cannot guarantee they will honor the claim due to the 02/26/24 cancellation." Prior to the loss, Defendant did not take the steps to rescind the disputed cancellation and reinstate the Policy's coverage. Neither Plaintiff nor Burns & Wilcox received any communication from Defendant requesting that Plaintiff rescind its disputed cancellation of the Policy prior to the May 19, 2024 fire loss.

Burns & Wilcox e-mailed Presidio a response, which stated: "Thank you for forwarding. Please note we have alerted [Burns & Wilcox] claims to assist Ategrity in the handling of this claim. This policy was however canceled eff 2/26/2024 for failure to comply with inspection." A copy of the "Cancellation" endorsement and premium refund invoice were attached to the e-mail. On May 21, 2024, Plaintiff confirmed to Presidio that it was unable "to locate an active policy for that date of loss," and only "a cancelled policy as of 02/26/2024." On June 7, 2024, Plaintiff e-mailed Defendant's outside counsel attaching a formal denial for its claim and the Notice of Cancellation.

Plaintiff filed this action on November 8, 2024, seeking a declaratory judgment that the Policy was cancelled prior to the Store fire and does not provide coverage for the loss. Defendant filed a

4

counterclaim asserting that Plaintiff failed to comply with the notice requirements of the Policy and that Plaintiff did not have the right to cancel the Policy.

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted). In deciding whether summary judgment is appropriate, the court "may not weigh conflicting evidence or make credibility determinations." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (cleaned up). When evaluating cross-motions for summary judgment, the Court applies the same standards and takes the facts in the light most favorable to the non-movant for each motion. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO*, 335 F.3d 643, 648 (7th Cir. 2003).

## III. Discussion

### A. Plaintiff's Motion for Summary Judgment

Plaintiff advances several arguments in support of its motion for summary judgment: that Plaintiff's notice of cancellation satisfied the requirements in the Policy; that Plaintiff validly exercised

its contractual right to cancel the Policy for "any other reason"; and that Defendant waived and is estopped from disputing the Policy's cancellation.

To interpret insurance policies, federal courts sitting in diversity apply state law. *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015). Because an insurance policy is a contract, Illinois courts apply "traditional contract interpretation rules … to discern [the policy's] meaning." *Philadelphia Indem. Ins. Co. v. Bellin Mem'l Hosp.*, 126 F.4th 532, 542 (7th Cir. 2025) (citing *Galarza v. Direct Auto Ins. Co.*, 2023 IL 129031, ¶ 38, 234 N.E.3d 75, 82). The Court must "ascertain and give effect to the intention of the parties, as expressed in the policy language." *Thounsavath v. State Farm Mut. Auto. Ins. Co.*, 2018 IL 122558, ¶ 17, 104 N.E.3d 1239, 1244. If the terms of a policy are unambiguous, they are applied as written, assuming they do not contravene public policy. *Id.* (citing *Schultz v. Ill. Farmers Ins. Co.*, 237 Ill.2d 391, 400, 341 Ill.Dec. 429, 930 N.E. 2d 943 (2010)). Ambiguity exists where the language of the policy is susceptible to more than one reasonable interpretation. *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 308 (7th Cir. 2021) (citing *Founders Ins. Co. v. Munoz*, 237 Ill.2d 424, 433, 341 Ill.Dec. 485, 930 N.E.2d 999 (2010)). Courts do not consider disagreement between parties about the meaning of a provision as an ambiguity, nor will courts "strain to find an ambiguity where none exists." *Id.*

### a. Notice

Plaintiff maintains that its notice of the Policy's cancellation satisfied all requirements under the terms of the Policy. Defendant argues that notice was ineffective because the Chadwicke Court address in its insurance application, not the Barrington address in the Policy, was the "last mailing address known to [Plaintiff]."

The Policy's cancellation provision provides that Plaintiff must provide notice by "mail[ing] or deliver[ing] [its] notice to the first Named Insured's last mailing address known to [Plaintiff]." The facts establish that the "last mailing address" known to Plaintiff was the Barrington address.

6

The Barrington address identified on the "Common Policy Declaration" page of the Policy was the most recent "mailing" address of which Plaintiff was aware; the Policy postdated the applications submitted by Defendant, making it the "last" address "known" by Plaintiff. Plaintiff would naturally refer to the Policy, not Defendant's insurance applications, to determine Defendant's "mailing" address. There are no facts showing that at any time thereafter the Chadwicke Court address was designated as Defendant's actual "mailing" address, nor that Defendant took steps to change its listed "mailing" address. To the extent that Defendant argues that the address it provided on its November 10, 2023 application was the applicable "mailing" address and that Plaintiff was mistaken, that does not change the conclusion. A contracting party is presumed to know those things that reasonable diligence would bring to its attention. *Hawkins v. Capital Fitness, Inc.*, 2015 IL App (1st) 133716, ¶ 14, 390 Ill. Dec. 510, 29 N.E.3d 442 (recognizing that the act of signing legally signifies that the individual had an opportunity to become familiar with and comprehend the terms of the document he or she signed); *Asset Exchange II, LLC v. First Choice Bank*, 2011 IL App (1st) 103718, ¶ 43, 352 Ill. Dec. 207, 953 N.E.2d 446 ("One is under a duty to learn, or know, the contents of a written contract before he signs it, and is under a duty to determine the obligations which he undertakes by the execution of a written agreement." (internal quotation marks omitted.))

Therefore, Plaintiff complied with the Policy by mailing notice to Defendant's "last known" address more than thirty days before the effective cancellation date on the Notice (as the "other reason" for cancellation was not nonpayment). Burns & Wilcox also obtained proof of mailing to Defendant's "last known" address which, under the plain language of the Policy, constitutes "sufficient proof of notice." In sum, the parties' stipulated facts demonstrate that Plaintiff satisfied each of the Policy's cancellation requirements. Accordingly, there is no genuine issue of material fact on the sufficiency of the notice provided to Defendant.

### b. *Ability to Cancel*

Plaintiff claims that it validly cancelled the Policy because it "unambiguously provides that [Plaintiff] could cancel the Policy upon 30 days' notice" for any reason.[1] The language of the Policy provides that both parties have an absolute right to cancel the Policy, and that Plaintiff was entitled to cancel the Policy by "mailing or delivering [Defendant] written notice of cancellation" at least "10 days before the effective date of cancellation if [Plaintiff] cancel[s]" if the reason is "nonpayment of premium," or "30 days before the effective date of cancellation if [Plaintiff] cancel[s] for *any other reason*" (emphasis added).

Defendant argues that reading "any other reason" as "any reason" does not effect the parties' intent and improperly extends the Policy terms beyond its limits. This argument is unavailing. Once again, the cancellation provision states that Plaintiff "may" cancel the Policy upon providing requisite notice. Defendant claims that the plain reading of the text is that "any other reason" refers to specific other reasons discussed elsewhere in the Policy. Thus, Defendant argues that the Policy prohibits Plaintiff to cancel the Policy for "not following a 'recommendation,'" which is not a "reason" explicitly listed in the Policy.

Further down in the cancellation provision, another paragraph enumerates certain conditions for which an individual "Coverage Part" may be cancelled. These include vacancy or failure to repair damage to a "Covered Property" (that is, the specific property designated in the Policy). The effect is that different notice requirements are imposed by the Policy if one of those conditions exists; in those cases, the Policy requires five-day notice prior to the effective date of cancellation. The Policy thereby differentiates between the general requirements for cancelling the Policy and the

---

[1] Plaintiff also argues that because the Policy qualifies as "surplus lines insurance," Plaintiff's ability to cancel the Policy was not limited by statutory limitations on cancellation. Defendant does not address this argument in its Response, nor does Plaintiff revisit it in its Reply. Arguments not developed in opposition to summary judgment are waived. *Nichols v. Mich. City Plant Planning Dept.*, 755 F.3d 594, 600 (7th Cir. 2014). Therefore, the Court does not address the issue.

separate five-day notice required to cancel certain "Coverage Parts." Amending notice requirements in specified conditions exist does not limit the phrase "any other reason." The natural reading of the provisions together is that Plaintiff may cancel the Policy for "any other reason" besides "nonpayment," and that there are other requirements if certain conditions exist notwithstanding the "reason" for the cancellation. The fact that the cancellation provisions differentiate between cancelling the "policy" and cancelling a particular "Coverage Part" bolsters the conclusion that the latter was not intended to limit the former.

Defendant's cases are inapposite. In *Fandrich v. Allstate Ins. Co., Inc.*, the court found that the contract permitting termination "[f]or any other reason" only gave the defendant "the right to terminate only upon a proper showing of cause and [a] … certificate that sufficient cause exists." 25 Ill. App. 3d 301, 312, 322 N.E.2d 843, 849 (1974). In other words, the contract limited defendant's ability to terminate *without* cause. *Id.* The contract contained "express provisions concerning the types of causes deemed to be grounds for termination of the contract" which "would be meaningless" if the phrase "any other reason" were interpreted to include reasons without cause.

In *Zubi v. Acceptance Indem. Ins. Co.*, the Illinois court analyzed a cancellation provision substantially similar to the one at issue here. The insurer in that case could cancel an insurance policy "30 days before the effective date of cancellation if [it] cancel[ed] for any other reason." 323 Ill. App. 3d 28, 34, 751 N.E.2d 69, 75 (1st Dist. 2001). There were similar provisions specifying five- and ten-day notice requirements where certain conditions were present, such as vacancy and damage. The court found that the "plain language" of the contract "[did] not limit [the insurer's] right to cancel" to *only* "the reasons set forth in the policy." *Id.* at 34. It explained that to find "such a limitation would render the 30-day notice provision superfluous," because enumerated the reasons described in the Policy were instead subject to 5- or 10-day notice provisions. *Id.*

9

The same argument applies here.  Again, the facts demonstrate that noncompliance with the risk engineering recommendations qualified as "any other reason" for Plaintiff to exercise its right to cancel.  Defendant did not comply with those recommendations, so Plaintiff acted well within its rights to cancel the Policy.  Accordingly, there is no genuine issue of material fact as to whether Plaintiff could cancel the Policy for any reason.

       c.   *Waiver and Estoppel*

Finally, Plaintiff asserts that the undisputed facts establish Defendant waived, and is estopped from, the argument that the Policy was not effectively cancelled.  Plaintiff argues that Defendant indicated its acceptance and did not dispute the cancellation of the Policy until after the loss several months later, which constitutes conduct Plaintiff could reasonably believe that Defendant did not dispute the cancellation, thereby waiving its right to do so now.

The Court need not delve into the issues of waiver and estoppel.  Even if Defendant had not waived its assertion that the Policy was not effectively cancelled, Defendant's argument on that issue doesn't pass muster for the reasons discussed above.

   B.   *Defendant's Motion for Summary Judgment*

Like Plaintiff's motion, Defendant's motion for summary judgment seeks a determination as a matter of law regarding Plaintiff's contractual obligations and rights under the Policy.  The issues overlap; Defendant argues in its motion that Plaintiff did not provide sufficient notice prior to the cancellation, that Plaintiff did not have the right to cancel the Policy for "any reason," and that failure to comply with the risk engineering recommendations was not a valid reason to cancel.

As the Court explained, the undisputed facts establish that under the terms of the contract Plaintiff provided adequate notice of cancellation, and acted within its rights to cancel the Policy for failure to follow the risk engineering recommendation.  Construing the facts in a light most favorable to Plaintiff, Plaintiff has shown that the Policy was cancelled effective February 26, 2024;

that coverage for the Store ended before the loss on May 19, 2024; and therefore that Plaintiff had the right to deny Defendant's claim for property insurance coverage for that loss. Based on these facts, no reasonable jury could find otherwise.

Because granting summary judgment for Plaintiff on these bases is appropriate, the Court must deny Defendant's motion for summary judgment.

## IV.     Conclusion

For the reasons stated herein, the Court grants Plaintiff's motion for summary judgment [37] and denies Defendant's motion for summary judgment [39]. Civil case terminated.

**IT IS SO ORDERED.**

Date: 7/31/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge

11